NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JAMAR BURNEY,                              :
                                           :  Civil Action No. 13-3126 (CCC)
            Plaintiff,                     :
                                           :
      v.                                   :  **OPINION**
                                           :
SGT. M. KIMBALL, et al.,                   :
                                           :
            Defendants.                    :

**APPEARANCES:**

    JAMAR BURNEY, Plaintiff <u>pro se</u>
    #000641
    East Jersey State Prison – Special Treatment Unit
    8 Production Way, CN-905
    Avenel, New Jersey 07001

**CECCHI**, District Judge

Plaintiff, Jamar Burney, an involuntarily committed person pursuant to the Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4-27.24, *et seq.*, seeks to bring this action *in forma pauperis*. Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B), to determine whether it should be

dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that Plaintiff's claims asserting the use of excessive force and denial of medical care should proceed at this time, but that his denial of freedom of association and state law defamation claims should be dismissed without prejudice.

## I.   BACKGROUND

Plaintiff, Jamar Burney ("Plaintiff"), brings this civil action, pursuant to 42 U.S.C. § 1983, against the following defendants: Sergeant M. Kimball, State Correctional Officer ("SCO") Brown; SCO Higgins; and SCO T. Nacca.[1] (Docket # 1, Complaint, Caption, and ¶¶ 4b, 4c.) The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

Plaintiff alleges that, on May 9, 2013, Defendant Higgins came to the South Unit, at the East Jersey State Prison-Special Treatment Unit ("EJSP-STU"), and threatened Plaintiff with

---

[1] This Court notes that Plaintiff filed an earlier Complaint, *Burney v. Hyatt, et al.*, Civil No. 13-2263 (CCC), on April 10, 2013, one month before filing the instant action. That earlier Complaint was dismissed without prejudice.

"severe bodily harm." (*Id.*, ¶ 6.) Another officer, SCO Aziz allegedly observed the incident but did not report it. (*Id.*)

The next day, on May 10, 2013, Plaintiff was admitted to the "Annex Facility Hospital" for treatment of a blood clot in his leg. He was returned to D-Unit until a doctor could see him. On May 12, 2013, at about 2:15 p.m., Defendant Higgins came up to Plaintiff while he was on the telephone with his wife and proceeded to punch Plaintiff in the face. Defendant Brown had admitted Higgins in the Unit area and had observed Higgins' actions. She came out of the booth and stood between Plaintiff and Higgins and told Higgins to stop punching Plaintiff. Higgins hit Plaintiff a couple times more and left the unit. Plaintiff alleges that he sustained a fractured jaw from the incident. He also alleges that Higgins had been assigned to another unit that day, but came to D-Unit for the purpose of assaulting Plaintiff. (*Id.*)

Plaintiff also alleges that Defendant Kimball, the supervising officer, "failed to allow a nurse or a doctor to examine [Plaintiff's] jaw," and disregarded Plaintiff's "pleas" for medical attention. Plaintiff now cannot "talk properly" from pain. (*Id.*)

Plaintiff further alleges that Kimball authorized Higgins to leave his post to assault Plaintiff, and that Kimball and

3

Defendant Nacca laughed about the incident.[2] (*Id.*) Plaintiff contends that Kimball stated that, "the next time [Plaintiff] talks to the Star Ledger, he'll think twice." (*Id.*)

In an addendum filed on May 24, 2013, Plaintiff admits that he was taken to the hospital on May 14, 2013 for treatment of his injuries. He generally alleges that supervisory officials, Unit Director Shantay Brame Adams and Clinical Director Merrill Main ignore these "serious situations" with the Department of Corrections ("DOC") officers. (Dkt. # 2, Addendum at 2.) Plaintiff further alleges that there are no investigations of these assaults on residents by DOC officers, but rather the residents are charged with disciplinary infractions. (Id. at 2-4.)

Plaintiff next complains that, on May 15, 2013, residents of South Unit were brought to the yard while officers searched the residents' cells. Plaintiff alleges that this conduct has occurred for three weeks "in retaliation and harassment of some residents telling the truth" about correctional officers committing assault on residents. (*Id.* at 4.) Plaintiff further alleges that the videotape of Higgins assaulting Plaintiff was lost. He also alleges that Higgins broke his hand when he

---

[2] Plaintiff also alleges that Defendant Nacca participated in Defendant Higgins' assault.

4

struck Plaintiff, but that is not mentioned in any reports of the incident. Plaintiff's jaw allegedly was broken in three places. (*Id.* at 5-7.)

Plaintiff also alleges that he was returned to the same environment where he was assaulted and that Defendant Higgins has a post in that area. He alleges that he had an I.V. when Higgins assaulted him on May 12, 2013, and that his parents and girlfriend came to the EJSP-STU the day he was assaulted but were refused visitation. Plaintiff further alleges that his parents came to the Union Memorial Hospital before, during and after his surgery for his broken jaw, but were not permitted to see Plaintiff. (*Id.* at 7-10.)

Plaintiff alleges that since May 20, 2013, he has been locked in cell #18 in D-Unit with no phone calls, visits, showers, etc. Plaintiff further complains that the administrators and Internal Affairs Department at EJSP-STU are ignoring his requests to speak to witnesses of the assault, and that Ombudsman Kenneth Rozon is "hiding statements that he received from [Plaintiff's] witnesses." (*Id.* at 11, 12.) Plaintiff asserts violations of his freedom of association and defamation of character, in addition to claims of excessive force and denial of medical care. (*Id.* at 13.)

5

Plaintiff seeks monetary compensation for his physical injuries. He also asks to be transferred to another facility and to have a "special master" oversee the requested injunctions. (Dkt. # 1, Compl., ¶ 7.)

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

Per the Prison Litigation Reform Act, Pub.L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis* or seeks redress against a governmental employee or entity. Specifically, the PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b). Accordingly, because Plaintiff is proceeding *in forma pauperis* in this matter, this action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim under [the PLRA] is the same as that for dismissing a complaint pursuant to a motion filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Aruanno v. Green*, 527 F. App'x 145, 147 (3d Cir. 2013) (discussing 28

6

U.S.C. § 1915(e)(2)(B)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (28 U.S.C. § 1915A(b)). According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, to prevent summary dismissal, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). Moreover, while pro se pleadings are liberally construed, *Higgs v. Atty. Gen.*, 655 F.3d 333, 339 (3d Cir. 2011), "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted). Nonetheless, courts must be cognizant that the *Iqbal* standard "is not akin to a probability requirement." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

### III. SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

7

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## IV. DISCUSSION

### A. Excessive Force Claim

Plaintiff first asserts a claim that Defendants Higgins and Nacca used excessive force against Plaintiff by assaulting him without provocation in violation of his constitutional rights. As a civilly committed person, Plaintiff's excessive force claim is governed by the Due Process Clause of the Fourteenth Amendment. *See Rivera v. Marcoantonio*, 153 F. App'x 857, 859 n.1 (3d Cir. 2005); *Artis v. McCann*, Civil No. 11-3613 (WJM), 2013 WL 2481251, *4 (D.N.J. Jun. 10, 2013) (finding Fourteenth Amendment applicable to civilly-committed persons, but also applying the Eighth Amendment standards as the floor for such

8

claims);[3] *Aruanno v. Caldwell*, Civil No. 09-5652 (WJM), 2011 WL 2293385, *7 n.5 (D.N.J. Jun. 8, 2011) (same).

The standards for analyzing Fourteenth Amendment due process claims were established by the Supreme Court in *Bell v. Wolfish*, 441 U.S. 520 (1979). In *Bell*, the Supreme Court stated:

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law....
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that

---

[3] In a recent non-precedential decision, the Court of Appeals for the Third Circuit observed that Fourteenth Amendment's Due Process Clause applies to excessive force claims by pretrial detainees, but where the claim stems from a prison disturbance, the Eighth Amendment standard is generally applied because prison guards cannot be expected to draw distinctions between sentenced and un-sentenced inmates while they are trying to stop a prison disturbance. *Carson v. Mulvihill*, 488 F. App'x 554, 562 (3d Cir. 2012). As the facts in this case do not indicate a prison disturbance, the Fourteenth Amendment standard will be applied.

> the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees....

*Bell*, 441 U.S. at 535-39 (citations omitted). The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Id.* at 540. Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives. *Id.* at 539 n. 20. Nor are grossly exaggerated responses to genuine security considerations. *Id.* at 539 n. 20, 561-62.

Thus, in order for Plaintiff to prove a claim for excessive force, he must demonstrate that the force used amounted to a wanton infliction of punishment, as opposed to restraint rationally related to exercising control. *Fuentes v. Wagner*, 206 F.3d 335, 342 (3d Cir. 2000); *see also Bell*, 441 U.S. at 535. Further, while correctional officers may use force against an inmate to preserve order and maintain the safety of other inmates and staff, they may not use gratuitous force against an inmate who has been subdued. *See, e.g., Giles v. Kearney*, 571

F.3d 318, 326 (3d Cir. 2009); *Bethune v. Cnty. of Cape May*, Civil No. 08-5738, 2011 WL 2037627, *3 (D.N.J. May 20, 2011).

Construing all inferences in Plaintiff's favor, as the Court must do at this preliminary screening stage, this Court preliminarily finds that Plaintiff has pled facts sufficient to state a plausible claim for relief necessary to withstand summary dismissal at this time. In particular, the facts, as alleged by Plaintiff in his Complaint, are sufficient to question the use of force exercised by Defendant Higgins and the manner and purpose for which the force was applied. Plaintiff alleges that Higgins punched him in the face repeatedly while Plaintiff was on the phone. He does not allege any incidents or unit disturbances that warranted Higgins' unprovoked assault. Plaintiff also alleges that Defendant Kimball allowed the assault to occur and did nothing to protect Plaintiff from harm. Therefore, the Court will allow Plaintiff's Fourteenth Amendment excessive force claim to proceed at this time against Defendants Higgins and Kimball.

However, Plaintiff alleges no facts to support a claim of excessive force, failure to protect, or any other constitutional violation by Defendants Brown and Nacca. In fact, Plaintiff alleges that Brown interceded and placed herself between Higgins and Plaintiff to stop the alleged assault. As to Nacca,

11

Plaintiff makes a general allegation that Nacca and Higgins "intentionally started assaulting [Plaintiff], when [he] was on the phone," (Dkt. # 1 at ¶ 4c), but in Plaintiff's recitation of the assault in his Statement of Claims, Plaintiff makes no mention of Nacca's involvement.  Therefore, the Complaint will be dismissed without prejudice, in its entirety, as against Defendants Brown and Nacca.

B.  Denial of Medical Care Claim

Next, it appears that Plaintiff may be alleging a denial of medical care claim because it took two days for Plaintiff to be taken to the hospital for treatment of his broken jaw.  This Court will rely upon the Fourteenth Amendment in analyzing Plaintiff's denial of medical care claim.  *See City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 243-45 (1983) (holding that the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, controls the issue of whether prison officials must provide medical care to those confined in jail awaiting trial); *Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005); *King v. Cnty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008).  In *Hubbard*, the Third Circuit clarified that the Eighth Amendment standard acts only as a floor for due process inquiries into medical and non-medical conditions of pretrial detainees.  399 F.3d at 165-67.

12

The Fourteenth Amendment standard of unconstitutional punishment, like the Eighth Amendment's cruel and unusual punishments standard, contains both an objective component and a subjective component:

> Unconstitutional punishment typically includes both objective and subjective components. As the Supreme Court explained in *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 ... (1991), the objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* at 298.... The Supreme Court did not abandon this bipartite analysis in *Bell*, but rather allowed for an inference of *mens rea* where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective.

*Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).

In this case, Plaintiff alleges that he was denied medical attention for treatment of his jaw, which had been broken in three places. He alleges that Defendant Kimball denied Plaintiff medical care for two days without any medical or legitimate justification before being sent to the Union Memorial Hospital on May 14, 2013. Consequently, it would appear that Plaintiff has alleged facts sufficient at this time to raise a "plausible claim for relief." *Iqbal*, 556 U.S. at 679. The medical claim will be allowed to proceed at this time as against Defendant Kimball.

13

C.  <u>Supervisor Liability</u>

Plaintiff also generally alleges in his addendum to the Complaint that supervisory officials Adams and Main ignore these incidents of assaults and conduct no investigations. Plaintiff does not specify any facts in support of this broad allegation.

As a general rule, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. See *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dept. Of Social Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983). In *Iqbal*, the Supreme Court held that "[b]ecause vicarious or supervisor liability is inapplicable to *Bivens*[4] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Thus, each government official is liable only for his or her own conduct. The Supreme Court rejected the contention that supervisor liability can be imposed where the official had only "knowledge" or "acquiesced" in their subordinates conduct. See *id.*, 556 U.S. at 677.

---

[4] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Thus, to establish supervisory liability as to Defendants Main and Adams, Plaintiff "must prove that the alleged tortfeasor was 'directed to violate' [Plaintiff's] constitutional rights by his superiors." *Cluver v. Borough of Sayreville*, Civil No. 10-3173 (MAS), 2013 WL 394030 at *11 (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This can be demonstrated by showing that the "supervisor gave directions that the supervisor 'knew or should reasonably have known would cause others to deprive the plaintiff of [his] constitutional rights.'" *Cluver*, *supra* at *11 (quoting *Santiago*, *supra* at 130). Significantly, "any claim that supervisors directed others to violate constitutional rights necessarily includes as an element an actual violation at the hands of subordinates." *Santiago*, *supra*.

As observed above, there are no allegations of any wrongful conduct with respect to Defendants Main and Adams, other than identifying them as supervisory officials and making a broad, conclusory remark that these Defendants ignore these "serious situations" by DOC officers. (Dkt. # 2, Addendum.) Plaintiff does not allege that these Defendants had specific knowledge as to this incident. Therefore, the Complaint will be dismissed without prejudice as against Defendants Main and Adams accordingly.

D.  Freedom of Association Claim

Plaintiff also alleges that he is denied his First Amendment right to freedom of association with other residents because he is locked in his cell and the Internal Affairs Department at the EJSP-STU are ignoring his requests to speak with witnesses to the assault. This Court notes Plaintiff's earlier Complaint, *Burney v. Hyatt, et al.*, Civil No. 13-2263 (CCC), in which Plaintiff states that he has been placed in segregation, or "M.A.P." status, for disciplinary purposes and for his protection. (*Id.*, Dkt. # 1 at ¶¶ 4b, 6.) In the present action, Plaintiff also admits that he has been placed in isolation after the assault incident. (Dkt. # 2 at 10, 11.) Thus, the alleged restrictions on Plaintiff's freedom of association with other residents, while he is on segregated status for either his protection or for disciplinary reasons, would appear to be reasonably related to legitimate government interests in maintaining institutional security. *See generally, Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (holding that freedom of association is among the rights least compatible with incarceration).

Moreover, while Plaintiff is not a prisoner, he is a civilly committed person under the SVPA, which deems him a dangerous sex offender. As such, like inmates, Plaintiff may be

16

subjected to penological restrictions reasonably related to his status as an adjudicated SVP. *See Semler v. Ludeman*, Civil No. 09-0732 ADM/SRN, 2010 WL 145275, \*15 (D. Minn. Jan. 8, 2010) (finding that restrictions on a civilly committed sex offender's right to freedom of association is permissible where such restrictions are reasonably related to legitimate interests to ensure security and order in the facility). The Court of Appeals for the Seventh Circuit has acknowledged that restrictions on association or interaction between civilly committed persons are not constitutionally offensive if the restrictions rest on legitimate security measures or disciplinary purposes, and are not treatment decisions. *Lane v. Williams*, 689 F.3d 879, 882 (7th Cir. 2012). Here, the freedom of association restrictions appear to be consistent with Plaintiff's status as a dangerous sex offender.

Accordingly, Plaintiff's freedom of association claim is dismissed without prejudice for failure to state a cognizable claim at this time. Plaintiff's freedom of association claim also fails to allege "sufficient factual matter" to show that the claim is facially plausible. *See Iqbal*, 556 U.S. at 676. Consequently, this general claim, as pled, does not satisfy the threshold requirement set forth in *Iqbal*, and alternatively, it

17

will be dismissed without prejudice for failure to state a claim at this time.[5]

E.  Defamation Claim

Finally, Plaintiff asserts a bare claim of defamation of character without any factual support. "Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991); *see also Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989); *Thomas v. Christy*, Civil No. 13-2560 (NLH), 2013 WL 1792398, *2 (D.N.J. Apr. 25, 2013). To state a defamation claim under New Jersey law, a defendant must make a false and defamatory statement of fact about plaintiff that the defendant knew or should have known was false, and that was communicated to third parties, causing damages. *See Artista Records, Inc. v. Flea World, Inc.*, 356 F. Supp.2d 411, 424 (D.N.J. 2005) (citing

---

[5] This dismissal is without prejudice to Plaintiff filing an amended Complaint to allege facts that conform to the legal standards set forth in this Opinion. Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. *See West Run Student Housing Associates, LLC v. Huntington National Bank*, No. 12-2430, 2013 WL 1338986, *5 (3d Cir. Apr. 4, 2013) (collecting cases). *See also* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (3d ed. 2008). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. *Id.* To avoid confusion, the safer course is to file an amended complaint that is complete in itself. *Id.*

*Beck v. Tribert*, 312 N.J. Super. 335, 711 A.2d 951, 953-59 (N.J.Super.Ct. App.Div. 1998)); *see also W.J.A. v. DA.*, 416 N.J.Super. 380, 384-85 (App. Div. 2010) ("plaintiff must show that defendant communicated to a third person a false statement about plaintiff that tended to harm [the] plaintiff's reputation in the eyes of the community or to cause others to avoid plaintiff," quoting *McLaughlin v. Rosanio*, 331 N.J.Super. 303, 312, 751 A.2d 1066 (App. Div. 2000)).

In his Complaint, Plaintiff makes no allegations of fact to establish a tort claim of defamation. Moreover, tort claims are not constitutional in nature. Therefore, the claim is dismissed for failure to state a cognizable claim of a constitutional deprivation.

## V.   CONCLUSION

For the reasons set forth above, Plaintiff's claim alleging use of excessive force in violation of his Fourteenth Amendment rights will be allowed to proceed at this time as against Defendants Higgins and Kimball. In addition, Plaintiff's denial of medical care claim will be allowed to proceed against Defendant Kimball. However, the Complaint will be dismissed without prejudice, in its entirety, as against Defendants Brown, Nacca, Main and Adams, for failure to state a claim at this time. Finally, Plaintiff's claims asserting denial of freedom

19

to associate and a state law tort claim of defamation are dismissed without prejudice, as against all named defendants, for failure to state a claim at this time. An appropriate order follows.

                                                      CLAIRE C. CECCHI
                                                     United States District Judge

Dated: January 15, 2015